IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SUPERIOR AIR, INC.,<br><br>    Defendant. | Case No. 1:25-cv-01560 (RDA/WBP) |

**PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

Plaintiffs Board of Trustees Sheet Metal Workers' National Pension Fund, Trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry, Sheet Metal Workers' International Association Scholarship Fund, Sheet Metal Occupational Health Institute Trust, and National Energy Management Institute Committee (collectively, "Plaintiffs" or "Funds") request a default judgment against Defendant Superior Air, Inc. ("Defendant" or "Superior Air"). ("Motion"; ECF No. 8.) Pursuant to 28 U.S.C. § 636(b)(1)(C), I recommend that the district judge grant Plaintiffs' motion for default judgment for the reasons stated below.

## I. Procedural Background

Plaintiffs constitute a collection of employee benefit plans, trust funds, and joint labor-management organizations administered from Falls Church, Virginia. (ECF No. 1 ¶¶ 1, 3.) Superior Air, a California corporation, employs specialty craft workers to, among other things, construct schools in Southern California. (*Id.* ¶ 11; *see* ECF No. 9-1.)

For some of its business projects, Superior Air signed Project Subscription Agreements and Project Labor Agreements that obligated Superior Air to the terms of collective bargaining

agreements ("CBAs") with Local Union Nos. 104 and 206[1] (the "Unions"). The CBAs required Superior Air to pay benefits to Plaintiffs for covered employees who were members of those Local Unions. (ECF No. 9 at 2.) When Superior Air failed to make its required payments, Plaintiffs brought this action. (*Id.* at 4.)

On September 18, 2025, Plaintiffs filed a single-count Complaint against Superior Air seeking to recover delinquent contributions, liquidated damages, interest, attorneys' fees, costs, and audit fees incurred through the date of judgment. Plaintiffs brought their claims under Sections 502(a)(3), (d)(1), (g)(2), and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), and 1145; and under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Plaintiffs also request any additional amounts that become due through the date of judgment under Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the CBAs, and the Trust Document governing the Funds. (ECF No. 1 ¶ 1.)

The Clerk issued a summons for service on Superior Air (ECF No. 3), and a process server served Superior Air's registered agent on September 22, 2025 (ECF No. 4). Accordingly, Superior Air was required to answer the complaint by October 13, 2025. Because Superior Air never answered or otherwise responded to the Complaint, on October 15, 2025, the district judge *sua sponte* ordered Plaintiffs to move for an entry of default against Superior Air under Rule 55(a) of the Federal Rules of Civil Procedure. (ECF No. 5.) On October 17, 2025, as directed,

---

[1] The Complaint makes a singular reference to "Local Union 105." (ECF No. 1 ¶ 12.) But no other pleading mentions this union, and Plaintiffs have not otherwise provided evidence that Superior Air conducted business or executed agreements with Local Union 105. This may be a remnant from another case, so the Court will disregard it. *See Board of Trustees, Sheet Metal Workers' National Pension Fund, et al. v. Broadway Indus., Inc.*, No. 1:25-cv-1213 (E.D. Va. July 22, 2025).

Plaintiffs moved for entry of a default against Superior Air, which the Clerk entered four days later. (ECF Nos. 6, 7.) Plaintiffs then filed this Motion (ECF No. 8) and a Memorandum in Support (ECF No. 9). The Court held a hearing on Plaintiffs' Motion for Default Judgment on November 21, 2025. (ECF No. 11.) Plaintiffs' counsel appeared, but no one appeared on behalf of Superior Air. (*Id.*) At the hearing, the Court ordered supplemental briefing on the amount of audit fees, which Plaintiffs filed on December 2, 2025 (ECF No. 12).

## II. Factual Background

The Complaint (ECF No. 1), the Motion (ECF No. 8), and Plaintiffs' Memorandum in Support of Default Judgment with its accompanying exhibits (ECF No. 9) establish these facts.

Superior Air hired union members of the International Association of Sheet Metal, Air, Rail, and Transportation Workers Union, Local Unions 104 and 206. (*See* ECF No. 9 at 2-4.) The Unions therefore required Superior Air to execute CBAs with them. (*Id.*) These CBAs required Superior Air to submit monthly remittance reports and to make monthly fringe benefit contributions to Plaintiffs for the benefit of Superior Air's employees who were also members of Local Unions 104 and 206. (*Id.* at 4; ECF No. 1 at 6.) The CBAs required that Superior Air make these payments to Plaintiffs by the twentieth day of the month following the month Superior Air paid the employees. (ECF No. 1 ¶ 17.) Under the CBAs, these payments became delinquent if they were not timely made. (*Id.*)

## III. Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure requires the clerk of court to enter a default upon request when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Because Superior Air failed to respond or otherwise defend this action, the Clerk entered default against it. (ECF No. 7.)

Once in default, the Court considers the facts alleged in a complaint as admitted against the defendant, leaving the Court to determine whether the facts alleged state a claim. *See* FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). Even so, the Court does not automatically consider the amount of damages sought as admitted. *See* FED. R. CIV. P. 8(b)(6). Instead, Federal Rule of Civil Procedure 55(b)(2) allows the Court to conduct a hearing to determine damages, to establish the truth of any allegation by evidence, or to investigate any other matter when necessary to enter or carry out judgment.

### A.     Jurisdiction and Venue[2]

The Court must establish both subject matter jurisdiction over a claim and personal jurisdiction over a party-in-default before it may enter a default judgment.

As for subject matter jurisdiction, district courts are vested with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies[.]" 28 U.S.C. § 1337(a). ERISA specifically vests district courts with jurisdiction to grant relief to a participant, beneficiary, fiduciary, or any person of an employee benefit plan. *See* 29 U.S.C. § 1132(e)(1). Because Plaintiffs administer the employee benefit plans at issue from offices in Falls Church, Virginia, this Court has subject matter jurisdiction over the action

---

[2] The Complaint only alleges subject matter jurisdiction and venue (ECF No. 1 ¶ 2, 3), but Plaintiffs allege personal jurisdiction over Superior Air in their Memorandum in Support of the Motion for Default Judgment. (ECF No. 9 at 7, 8).

4

pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). This Court may also exercise personal jurisdiction over Superior Air, as the plan is administered in this district and the statute allows for nationwide service of process. *See* 29 U.S.C. § 1132(e)(2). Venue is also proper because Plaintiffs administer the plans from within this district. *Id.*

### B. Service

Before entering default judgment, a court must determine that the defaulting party was properly served. ERISA allows service in any district where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2). Federal Rule of Civil Procedure 4(h)(1)(B) allows service to be made, among other ways, by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."

According to the affidavit of service filed with the Clerk on September 30, 2025, a private process server served the Summons and Complaint on Superior Air's registered agent in San Diego, California on September 22, 2025. (ECF No. 4.) The process server therefore properly served Superior Air with the summons and complaint.

### C. Grounds for Entry of Default

Under Federal Rule of Civil Procedure 12(a), Superior Air was required to file a responsive pleading within 21 days after it was served with the Summons and Complaint, so Superior Air's responsive pleading was due by October 13, 2025. Superior Air filed no responsive pleadings, and the deadline has expired. On October 17, 2025, Plaintiffs requested an entry of default, which the Clerk entered on October 21, 2025. (ECF Nos. 6, 7.)

### D.    <u>Liability</u>

Under Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because the Clerk has entered a default against Superior Air, the Court considers the Complaint's factual allegations admitted as to Superior Air. *See* FED. R. CIV. P. 8(b)(6). Plaintiffs seek unpaid and delinquent contributions owed under the CBAs, as well as liquidated damages, interest, late fees, attorneys' fees, costs, and audit fees. (ECF No. 1 ¶ 1.)

Plaintiffs seek default judgment against Superior Air for violating ERISA and the LMRA. (ECF No. 9 at 8, 9.) ERISA requires "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement [to] . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Separate from ERISA, the LMRA permits federal suits against employers for breaching collective bargaining agreements. *See* 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties[.]"). The LMRA thus serves as a separate vehicle for relief and supplements the relief provided by ERISA. *See Bd. of Trustees, Nat. Stabilization Agreement of Sheet Metal Indus. Tr. Fund v. AKS, LLC*, No. 1:14CV97 (LMB/TRJ), 2014 WL 3749710, at *4 (E.D. Va. July 29, 2014) (citing *Bugher v. Feightner*, 722 F.2d 1356, 1359 (7th Cir. 1983)).

ERISA[3] authorizes the following remedies for suits brought by a labor organization against an employer who fails to make required contributions:

---

[3] ERISA also was intended to supplement the existing right to bring a suit for breach of a collective bargaining agreement under the LMRA. *See Bd. of Trustees, Nat. Stabilization*

6

(A) the unpaid contributions;

(B) interest on the unpaid contributions;

(C) an amount equal to the greater of –

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not more than 20% of the amount determined by the court under subparagraph (A);

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and

(E) other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

### 1. CBAs

Plaintiffs support their claims with an affidavit from Ellen Odell ("Odell Affidavit"), the Payroll Audit Manager for Plaintiff Board of Trustees Sheet Metal Workers' National Pension Fund. (ECF No. 9-1 ¶ 1.) Ms. Odell's role involves supervising audits and determining whether employers have sufficiently cooperated with the audit process, and she evaluates whether employers have satisfied their obligations to the Funds. (*Id*. ¶ 2.) The Odell Affidavit supports Plaintiffs' allegations that the Funds are benefit plans and trust funds under ERISA, that the Funds are based in Falls Church, VA, and that Plaintiffs may bring suit under 29 U.S.C. § 185(a). (*Id*. ¶ 3.)

The Odell Affidavit also supports Plaintiffs' contention that Superior Air executed Project Subscription Agreements and Project Labor Agreements with Sheet Metal Workers

---

*Agreement of the Sheet Metal Indus. Tr. Fund v. 5 Starr Serv. & Constr.*, LLC, No. 1:15-cv-403, 2015 WL 4139226, at *3 (E.D. Va. July 8, 2015).

Local Union Nos. 104 and 206 and that these agreements required Superior Air to comply with the CBAs. (*Id.* ¶ 4.) Plaintiffs attach to the Odell Affidavit copies of the relevant agreements that require Superior Air to comply with the CBAs' terms.[4] (ECF No. 9-1 at 2-4; ECF No. 9-1, Exs. 1, 5, 8; ECF No. 9-2, Exs. 10, 13.)

      Article 5 of the first agreement with Local Union 206; Article 7 of the second, third, and fourth agreements with Local Union 206; and Article 10 of the agreement with Local Union 104, required Superior Air to submit monthly remittance reports and fringe benefit contributions to Plaintiffs for all hours worked by its covered employees within Local 104's and 206's jurisdictions. (*Id.*; ECF No. 9 at 4.) Schedule A describes the payments owed to the Funds. (ECF No. 9-3, Ex. 19; ECF No. 9-1, Exs. 1, 5, 8; ECF No. 9-2, Exs. 10, 13.) Under the CBAs, Superior Air was required to make all payments and to submit all remittance reports no later than the twentieth day after the end of each month following the month Superior Air paid the employees. (ECF No. 9-1 at 5.) When Superior Air's contributions became delinquent, Article V, Section 2 of the Trust Document required that Superior Air pay Plaintiffs daily interest of 0.0233%; liquidated damages equal to the greater of $50 or 10% of the contributions due for each month Superior Air failed to pay before Plaintiffs filed suit; liquidated damages equal to the greater of interest on the delinquent contributions at the above rate or 20% of the delinquent contributions

---

[4] Superior Air executed five separate Project Subscription Agreements and Project Labor Agreements with the Unions, each covering different periods of time. (ECF No. 9 at 2-4.) The first with Local Union 206 covers July 28, 2009, to December 27, 2014, which was extended to cover December 13, 2011, to the completion of work. (*Id.*) The second covers July 11, 2016, to July 11, 2019, later extended to cover December 16, 2019, to December 15, 2024. (*Id.*) The third covers November 15, 2016, to November 15, 2019, later extended to cover March 28, 2020, to the completion of work. (*Id.*) The fourth covers December 10, 2015, to December 10, 2018, which was later extended to December 10, 2021, and again to December 10, 2024. (*Id.*) The only agreement with Local Union 104 covers May 28, 2019, to May 28, 2024. (*Id.*)

owed at the time litigation was commenced; and attorneys' fees and costs incurred in pursuing the delinquent amounts. (ECF No. 9-1 ¶ 16(a)-(d); *id.*, Ex. 15.)

Under Article V, Section 3 of the Trust Agreement and Section B of the Introduction to the Collection Policy, the Funds may audit a contributing employer to ensure the employer's remittance reports and contributions are accurate. (ECF No. 9-1 ¶ 14; ECF No. 9-2, Exs. 15, 16.) Sections 2 and 3 of the Trust Agreement also require a defaulting employer to pay the audit fees incurred to investigate and collect delinquent contributions. (ECF No. 9-2, Ex. 15.)

### E.  **Damages**

Having established Superior Air's liability under ERISA and the LMRA, the Court addresses damages.

#### 1.  **Contributions, Interest, and Liquidated Damages**

In 2023, Plaintiffs audited Superior Air's records from January 2017 through September 2022. (ECF No. 9 at 6.) During this audit, Plaintiffs discovered that Superior Air had not prepared remittance reports or made required contributions to the Funds from September 2019 through September 2022. (ECF No. 9-1 ¶¶ 9, 18, 32; ECF No. 9-2, Ex. 18.) Accordingly, Superior Air is delinquent and must pay Plaintiffs the amounts required by the CBAs, as well as Plaintiffs' other damages. (*Id.* ¶¶ 32-34.)

The CBAs allow Plaintiffs to collect the following remedies for delinquent payments: (1) liquidated damages equal to the greater of $50 or 10% of the contributions due for each month of delinquent payments; (2) interest on the delinquent payments at a rate of 0.0233% per day; (3) liquidated damages equal to the greater of interest on all delinquent contributions or 20% of the contributions unpaid; and (4) attorneys' fees and costs incurred based on the failure to pay. (ECF No. 9-1 ¶ 16(a)-(d).)

Using Superior Air's records, Plaintiffs have demonstrated that Superior Air underreported the hours worked by its covered employees and that it underpaid its contributions. (ECF No. 9-1 ¶ 17.) Plaintiffs describe these damages in a table outlining Superior Air's monthly liability. (ECF No. 9-1, Ex. 18 at 7.) Consistent with these records, Plaintiffs may recover the following categories of damages for the period between September 2019 and September 2022:

- Contributions of $25,200.53,
- Interest of $10,880.75, and
- Liquidated damages of $10,880.75,[5]
- For a total of $46,962.03.

(ECF No. 9-2 ¶ 17.)

Plaintiffs have also demonstrated that the Collections Policy requires Superior Air to reimburse them for the $9,400.37 they spent for audit preparation and fieldwork conducted from December 2, 2021, to July 23, 2023. (*Id*. ¶ 18.) All these damages total $56,362.40.

I recommend that the district judge award Plaintiffs a total of $56,362.40 in contributions, interest, liquidated damages, and audit fees.

### 2. Attorneys' Fees and Costs

Plaintiffs request reasonable attorneys' fees and costs in their Complaint and in their Memorandum in Support of Default Judgment. (ECF No. 1 at 2; ECF No. 9 at 1.) "Under the so-called 'American rule,' a prevailing party generally cannot recover attorneys' fees from the losing party." *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006) (citing *Lee v. Mulford*, 269 Va. 562, 565

---

[5] The "Damages" column of Exhibit 18 of the Hagerman Affidavit calculates 20% of the unpaid contributions, totaling $5,053.24. (ECF No. 9-2, Ex. 18.) Under the CBAs, Plaintiffs are entitled to liquidated damages equal to the *greater* of interest on all delinquent contributions or 20% of the contributions unpaid. (ECF No. 9-1 ¶ 16.) Plaintiffs have therefore asked for the liquidated damages to be equal to the interest at $10,880.77. (ECF No. 8 at 3.)

(2005)). But the Supreme Court has "recognized departures from the American Rule only in 'specific and explicit provisions for the allowance of attorneys' fees under selected statutes.'" *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 412 U.S. 240, 260 (1975)). ERISA is such a statute, and it provides plaintiffs with the right to request and collect reasonable attorneys' fees and costs incurred in collecting unpaid sums due under ERISA. 29 U.S.C. § 1132 (g)(2)(D).

In calculating attorneys' fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). The Fourth Circuit has identified twelve factors for determining the reasonable number of hours and rate:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

The Federal Rules of Civil Procedure allow for an award of costs incurred to the prevailing party unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. FED. R. CIV. P. 54(d)(1).

Considering the factors explained by the Fourth Circuit in *Robinson*, the Court finds that the attorneys' fees described in the affidavit attached to the memorandum are reasonable. The billing record with hours worked, descriptions of work done, and rates applied are attached to the

affidavit of Diana M. Bardes ("Bardes Affidavit"). (ECF No. 9-2, Ex. 1.) Ms. Bardes is a partner in her eleventh year of practice. (ECF No. 9-2 at 1.) A seventh-year associate and a paralegal also worked on this case. (*Id.*; *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989) (encouraging "the use of lower cost paralegals rather than attorneys wherever possible . . . [to] reduce the spiraling cost of . . . litigation.").) Although an affidavit from local counsel affirming the typical rate for attorneys and staff in Northern Virginia did not accompany her affidavit, Ms. Bardes attached three decisions from this Court awarding similar attorneys' fees and costs for ERISA cases. (ECF No. 9-2, Exs. 2-4.)

The Bardes Affidavit and accompanying exhibits establish attorneys' fees of $5,012.50 based on 21 hours of counsel's time. (ECF No. 9-2 ¶ 5.) The total costs associated with this matter are $533.74, made up of process server fees and the $405 filing fee. (*Id.* ¶ 6.) I find that the hourly rate and time expended on this matter were appropriate and consistent with similar cases. *See, e.g.*, *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Chaney Inc.*, No. 1:15CV1452 (GBL/JFA), 2016 WL 3552108, at *4 (E.D. Va. Apr. 22, 2016), *report and recommendation adopted sub nom. Trustees of the Plumbers v. Chaney Inc.*, No. 1:15-CV-1452, 2016 WL 3552239 (E.D. Va. June 23, 2016) (awarding fees of $2,365 for 12 hours of work on an ERISA matter).

Accordingly, I recommend that the district judge award Plaintiffs $5,546.24 in attorneys' fees and costs.

### IV.     Recommendation

I recommend that the district judge enter a default judgment for Plaintiffs and against Defendant Superior Air in the total amount of $61,908.64. This number comprises $56,362.40 in damages and $5,546.24 in attorneys' fees and costs.

If Plaintiffs must take further action to enforce and collect this judgment, Plaintiffs should be permitted to apply to this Court or to the court in which enforcement is sought for further reasonable attorneys' fees and costs in addition to those set out in this Report and Recommendation.

## V. Notice

Through the Court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to Superior Air, Inc. at 8860 Kenamar Drive, Ste. 309, San Diego, CA 92121, or by service upon Defendant's registered agent, the parties are notified that objections to these proposed findings of fact and recommendations must be filed within 14 days of service of these proposed findings of fact and recommendations, and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations.

Entered this 13th day of January 2026.

_____
William B. Porter
United States Magistrate Judge

Alexandria, Virginia